H. E. YARCHO, Appellant, v. MIRIAM DAWSON, Appellee.

No. 40135.

NOVEMBER 18, 1930.

*Mears, Lovejoy, Jensen & Gwynne* and *H. L. Leslie,* for appellant.

*George Dawson* and *Sager & Sweet,* for appellee.

FAVILLE, J.:—On July 16, 1928, the appellant was the owner of 160 acres of land located in Palo Alto County, this state. At said time the appellee was the owner of certain property located in Waverly, which was used as a garage. On said date the parties entered into a written contract for the exchange of said properties. The terms of the written contract required that the appellee should assume and pay a certain mortgage upon said farm, to the extent of $7,800. The garage property of the appellee was to be conveyed free and clear of encumbrance. The appellee subsequently refused to perform said contract, and this action was instituted.

The appellee contends that the contract was procured from her by false and fraudulent representations, the general character of said alleged representations being that appellant represented that the said farm was good farm land, and would assure

appellee an income of $2,000 a year; that its actual cash value was $125 per acre; that there was an equity of $13,000 in said land over and above the mortgage thereon; and that the exchange would be profitable and advantageous to the appellee, and she would be assured thereby of a better and safer income from the property. It is alleged that all of said representations were false and untrue, and that appellee relied upon said statements and believed them to be true, in entering into said contract. For reply, the appellant denies the making of any false and fraudulent representations as claimed by appellee.

The case presents for our consideration a fact question, and, as is not unusual in cases of this character, the evidence is in conflict.

Appellant is a business man of experience. Appellee is a widow, with but limited knowledge and experience of business affairs. The appellant approached the appellee for the purpose of securing the trade in question; and, while there is a conflict between the appellee and the appellant as to what took place at that time, we are satisfied, from an examination of the record, that the appellee's version of the representations then made to her is substantially correct. Some of the representations may be regarded as mere expressions of opinion, but we are satisfied that appellant made the representations of fact, particularly as to the value of said farm, as claimed by appellee. It is true that appellant had not seen the farm at the time the representations were made to appellee, but he did not disclose that fact to the appellee, and made the representations as of his own knowledge.

The record shows that the farm land in question is located south of Emmetsburg, in Palo Alto County, on the Des Moines River bottom. The top soil is described as being a coarse, sandy soil, of shallow depth, with a gravel subsoil. One witness describes it as "an utter failure as a corn producer, and a poor producer of other crops." There is testimony to the effect that $2.00 an acre would be a good rental for the land, although other farms in that locality rent for from $8.00 to $10 an acre. The reasonable market value of the farm in July, 1928, is fixed by witnesses for the appellee at from $35 to $45 per acre. It appears that in 1928 practically the entire farm was sown to buckwheat, and that there was at said time the appearance of a fine crop of

buckwheat on said farm, then in bloom. It appears, however, that it was an unusual thing to plant a farm of 160 acres in buckwheat in that locality, and that the crop so planted amounted to little. One witness who had been acquainted with the land in question since 1895 testified that he had never seen anything in the way of a good crop on the farm, and if there was any corn ever raised on more than a couple of acres, he never saw it. Another witness described the land as having about two inches of dry sand on top of the ground; that there was no corn land at all; that the buildings were fair, but not in shape for farming. Other witnesses testified to substantially the same effect. Witnesses for appellee fixed the value of the buildings at from $2,500 to $3,000.

On the other hand, witnesses in behalf of the appellant fixed a value on the land at from $105 to $125 per acre. A loan of $9,000 had been placed on the farm by a loan company. Witnesses for the appellant fixed the value of the buildings at approximately $6,000.

The witnesses for the appellee fixed the value of her property at from $6,000 to $7,500.

The appellant acquired the farm property in a trade, without having ever examined it.

Before the contract in question was signed, the appellee requested a party who had been her agent in some other matters to inspect the premises for her. This the party did, making the trip in company with appellant, and in appellant's car. Said agent made a favorable report to appellee as to the condition of said farm as he saw it at the time. We are persuaded from an examination of the record that either the agent was incompetent to make a proper investigation of the farm, or that he was misled and deceived by its appearance and the representations made to him, or else that the agent was untrue to his trust, and falsely represented the condition of the land to appellee. In any event, we are satisfied from the record that the appellee is not necessarily bound, under the facts and circumstances of this case, by the representations that were made to her by her said agent.

The net result of the transaction, as finally consummated, was that, if the trade was effected, the appellee would part with a property that was worth from $6,000 to $7,500, was free from encumbrance, and had rented at from $50 to $85 a month in

cash, for a wholly undesirable, unprofitable, and nearly worthless farm, that was encumbered by a mortgage of $7,800, which appellee was to assume and agree to pay.

It is but fair to say that the appellant denies that the representations as to value were made by him as claimed by the appellee, but contends that both parties knowingly placed a fictitious value upon their respective properties, in view of the fact that there was to be a trade of said properties; but from an examination of the entire record in the case, we are satisfied that the appellee was persuaded to enter into said contract by representations of fact which she relied upon, and that said representations were false, and were known to the appellant to be false, or were made as of his own knowledge, and were made for the purpose of inducing the appellee to enter into said contract.

No useful purpose can be served by a further recital of the evidence in the case. We have examined it with care, and reach the conclusion that the contract was obtained by false and fraudulent representations, and is so inequitable and unconscionable that a court of equity should not decree specific performance thereof. The rules pertaining to cases of this character have been so frequently announced by this court that it is unnecessary that we repeat them in this opinion. See, however, *Dunlop v. Wever*, 209 Iowa 590, and cases cited; *Boyle v. Gelsing*, 206 Iowa 1208.

We reach the conclusion that the decree of the trial court is in harmony with our former decisions, and is supported by the evidence in the case. It must therefore be, and is, in all respects,—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.